## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent John W. Forte, being duly sworn, depose and state as follows:

## INTRODUCTION

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since 2002. I am currently assigned to the ATF Boston Field Division, Manchester, New Hampshire Field Office, and charged with investigating criminal offenses involving the federal firearms, explosives, arson, alcohol, and tobacco diversion laws.

2.      I am a "Federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

3.      I have received extensive training in the federal firearms laws and am familiar with ATF's regulations regarding the purchase and sales of firearms.  I have successfully completed the Criminal Investigations Training Program and the ATF New Professional Training (NPT) at the Federal Law Enforcement Training Center in Glynco, GA.  During the NPT program, I learned how to investigate criminal offenses involving the federal firearms, explosives, arson, alcohol, and tobacco diversion laws.  I have received advanced training with regard to conducting complex firearms trafficking investigations.  I have participated in dozens of investigations relating to the illegal acquisition and sales of firearms, the illegal manufacture and possession of National Firearms Act weapons and previously have sworn out numerous affidavits in support of search warrants and arrest warrants in firearms cases.  I have been certified as an Interstate Nexus Expert, that is, an expert in establishing whether particular

firearms or ammunition have traveled in interstate commerce thereby satisfying the interstate commerce element of many federal firearms crimes.

4.      I have probable cause to believe that evidence of a crime, fruits of a crime, and contraband and instrumentalities of violations of Title 18, United States Code, § 922(g)(3), Possession of a Firearm and Ammunition by an Unlawful User of a Controlled Substance and Title 26 U.S.C. §5845 and §5861(d), Possession of an Unregistered NFA Firearm, will be found in the locations specified below.

5.      I submit this application and affidavit in support of a search warrant authorizing a search of: (1) 145 Canterbury Lane in Londonderry, New Hampshire; (2) a Nissan Altima bearing Massachusetts license plate 1XS616; (3) RightSpace Storage, 15 Northwest Boulevard, Nashua, New Hampshire, Unit #69; and (4) the person of Sauma Deb. I seek to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, which relate to possession of a firearm and ammunition by an unlawful user of a controlled substance and possession of an unregistered NFA firearm as described in Attachment B (herein incorporated by reference).

6.      The facts set forth in this affidavit are based on my own personal knowledge and information provided by other law enforcement officers, records, documents, and from statements of individuals associated with and knowledgeable about the affairs of subjects of this investigation.  Because this affidavit is presented for the limited purpose of setting forth probable cause for the requested search warrant, I have not necessarily included every fact known to me through this investigation.

## **RELEVANT STATUTES**

7.      Title 18, United States Code, Section 922(g)(3), in relevant part:

It shall be unlawful for any person–

(3) who is an unlawful user of or addicted to any controlled substance…;

 …to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

8.     Title 26, United States Code, Section 5845 states, the definitions in relevant part:

For the purpose of this chapter –

(a) Firearm. The Term "firearm" means…(3) a rifle having a barrel or barrels of less than 16 inches length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e);…

(e) Any other weapon.  The term "any other weapon" means any weapon or device capable of being concealed on the person from which a shot can be discharged through the energy of an explosive, a pistol or revolver having a barrel with a smooth bore designed or redesigned to fire a fixed shotgun shell, weapons with combination shotgun and rifle barrels 12 inches or more, less than 18 inches in length, from which only a single discharge can be made from either barrel without manual reloading, and shall include any such weapon which may be readily restored to fire. Such term shall not include a pistol or a revolver having a rifled bore, or rifled bores, or weapons designed, made, or intended to be fired from the shoulder and not capable of firing fixed ammunition.

Title 26, United States Code, Section 5861 states, in relevant part:

It shall be unlawful –

(d) to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; ...

## PROBABLE CAUSE

9.     In October of 2019, I began investigating Sauma DEB for furnishing false information, namely his address, to a Federal Firearms Licensee (FFL) when DEB purchased

firearms.  I subsequently received information that DEB was an unlawful user of a controlled substance in possession of unregistered NFA weapons.

10.     On October 8, 2020, ATF Special Agent John Cook and I interviewed DEB in the parking lot of Shooters Outpost in Hooksett, NH.  When we made contact with DEB, he was passed out or asleep in the front seat of his Nissan Altima bearing Massachusetts license plate 1XS616.  We approached DEB's vehicle with our neck badges displayed. I noted that the driver's side window was partially open.  I also noted that DEB's vehicle was running.  I looked in the vehicle and noted that DEB's right hand was holding his phone and was on his lap.  I further noted that DEB's left arm was extended all the way down to the floor of the vehicle between the door and the driver's seat.

11.     I knocked on the window to wake DEB up. I identified myself as ATF and asked DEB to keep his hands where I could see them and DEB complied.  I asked DEB to step out of the vehicle and DEB agreed.  I opened the driver's side door of the vehicle.  Before DEB could exit the vehicle, I observed a handgun in the door storage compartment of the driver's side door.  I instructed DEB not to move.

12.     I asked DEB if I could make the pistol safe for officer safety purposes and DEB agreed.  I removed the loaded magazine from the firearm and noted that there was not a round of ammunition in the chamber.  I later identified the pistol as a ZEV Technologies, Model OZ9C, 9mm caliber pistol, serial number ZC00168.  During the entire interview, DEB lacked the concentration to stay focused on the interview and repeatedly would rub his eyes and face.

### 145 Canterbury Lane, Londonderry, NH

13.     On December 11, 2019, Trooper Richard DuPont of the New Hampshire State Police (NHSP) and I interviewed DEB at the ATF Manchester, NH Field office in Manchester,

New Hampshire.  During the interview, DEB provided a lease agreement between him and

Leann BALDOCK for him to reside at 145 Canterbury Lane in Londonderry, New Hampshire.

The lease covered the term of December 1, 2019 to December 1, 2020.

14.     On January 3, 2020, NHSP Trooper DuPont and Trooper First Class (TFC) Aaron

Richards conducted an interview of Leann BALDOCK at 145 Canterbury Lane in Londonderry,

New Hampshire.[1]  The purpose of the troopers visit was to verify that DEB resided at that

address.  BALDOCK stated that DEB resided at the residence and paid her $600 for rent.

BALDOCK told the troopers that DEB stayed at the residence most nights, but was required to

stay one night a week at his parents' house in Woburn, Massachusetts due to his Indian heritage.

15.     BALDOCK lead the troopers to the basement where there was an air mattress,

dressers, and an entertainment center with a television.  BALDOCK showed the troopers,

without prompting, that the dresser drawers contained men's clothing.  BALDOCK also showed

the troopers a gun cabinet in a closet.  Trooper DuPont subsequently described this cabinet as a

lightweight metal gun cabinet that was capable of holding rifles and shotguns.  Trooper DuPont

stated that the cabinet was in a basement utility/storage room at the bottom of the basement stairs

towards the front of the residence.

16.     I contacted United States Postal Service (USPS) Inspector Bruce Sweet and

requested a query of the USPS database for forwarding address submissions for DEB.

According to the USPS, on December 31, 2019, DEB filed a change of address from 8 Laraway

Court, Apartment 1B in Derry, New Hampshire 03038 to 145 Canterbury Lane in Londonderry,

---

[1] Detective Michael Tufo of the Londonderry, New Hampshire Police Department (LPD) advised S/A Forte that LPD has had numerous contacts with BALDOCK involving controlled substances and her suspected involvement with the trafficking of controlled substances or others involved in the same.  Det. Tufo stated that BALDOCK is known to abuse alcohol, as well as being a user of controlled substances.  Det. Tufo stated that they have responded to an overdose call for BALDOCK previously at the 145 Canterbury Lane address.

New Hampshire 03053.  Inspector Sweet further advised that on January 31, 2020, a change of address was submitted for DEB from 78 Mill Street, Apartment 1 in Woburn, Massachusetts 01801 to 145 Canterbury Lane in Londonderry, New Hampshire 03053.[2] [3]

17.     On February 12, 2020, Trooper DuPont notified me that he had obtained arrest warrants for DEB for misdemeanor charges related to his use of false documents to obtain a State of New Hampshire driver's license.

18.     On March 6, 2020, Londonderry Police Department (LPD) went to Canterbury Lane for a report of a suspicious car.  Upon arrival, LPD Officer Morin noted a blue colored Nissan Altima bearing Massachusetts registration 1DAL98.  Officer Morin made contact with two male individuals, the driver, DEB, and the front passenger.

19.     DEB advised the officer that he lived at 145 Canterbury Lane and that his vehicle was a rental.  Through both observation and conversation, Officer Morin learned that DEB had two firearms in the vehicle: a Sig Sauer, model P365, 9mm caliber pistol bearing serial number 66A392010 and a Sig Sauer, model MPX, 9mm caliber bearing serial number 62B065062. Officer Morin ran DEB's name and learned that DEB had active arrest warrants on NHSP charges.  Officer Morin arrested DEB arrest on the outstanding arrest warrants.

20.     During a search incident to arrest, Officer Morin found a bag of suspected heroin in DEB'S front left pants pocket.  As a result, Officer Morin took the two firearms into protective custody, but turned the vehicle over to DEB's girlfriend, Leann BALDOCK.

---

[2] On April 3, 2020, USPS Inspector Sweet advised that he was told by the Londonderry, New Hampshire post office that there was a letter addressed to "Deb Sauma" at the 145 Canterbury Lane address from the Gieco Insurance Company.
[3] Throughout this investigation, I learned that DEB stayed at hotels for short periods of time and that he rented cars, and had people rent cars for him.

21.     Later that same night, DEB was charged by LPD with Possession of a Controlled

Drug for the suspected heroin that was recovered from his person at the time he was arrested.

DEB was seen by a New Hampshire State Bail Commissioner that same night and was released.

Londonderry Police Department returned the two firearms to DEB before he left the department

premises.

<u>Manchester Firing Line – NFA Weapons</u>

22.     On April 2, 2020, I met with Jake Bowen, the owner/operator of the Manchester

Firing Line (MFL), a licensed federal firearms dealer and indoor shooting range, located in

Manchester, New Hampshire.   Mr. Bowen stated that on March 18, 2020, DEB purchased a

membership to the MFL.  On DEB's membership form he listed his address as 145 Canterbury

Lane in Londonderry, New Hampshire.  The membership form showed that DEB also answered

"No" to a question that asked "Are you an unlawful user of, or addicted to, marijuana or any

depressant, stimulant, narcotic or any other controlled substance?"

23.     According to Mr. Bowen, DEB, accompanied by Mark BROWN, Jr., returned to

MFL on March 30, 2020 in possession of two National Firearms Act (NFA) short-barreled rifles

for which he, nor BROWN, had National Firearm Registration and Transfer Record tax stamps.

Mr. Bowen stated that on that day, MFL employee Matthew Norloff, was monitoring the

customers on the range as the Range Officer.  The MFL has Range Officer(s) that are employees

and are required to patrol the range area.  The responsibilities of the Range Officers include, but

are not limited to, verifying that all shooters are using correct safety procedures when handling

firearms and to ensure that customers that bring NFA weapons into the range have

documentation showing they are properly registered with ATF.

24.     According to Mr. Bowen, Mr. Norloff came to him and advised that DEB and BROWN had two suspected NFA firearms.  Mr. Bowen stated that he then went on the range and spoke with DEB and BROWN.

25.     Mr. Bowen approached both DEB and BROWN and observed that DEB and BROWN had a Springfield Armory, model Saint that was configured as a pistol with an approximate barrel length of nine inches, but it had a collapsible stock and an anodized aluminum vertical foregrip installed onto the firearm.  Mr. Bowen stated that DEB and BROWN also had a second pistol of unknown make and model that had a side-folding shoulder stock attached and a vertical foregrip installed on the firearm.

26.     Mr. Bowen advised DEB and BROWN that the above described two firearms were in NFA configurations.  Mr. Bowen further instructed DEB and BROWN that they would not be allowed to shoot the firearms unless they removed the illegal items from the two firearms. Mr. Bowen stated that DEB told him he did not know that it was illegal to have the firearms in that configuration.

27.     Mr. Bowen stated that DEB and BROWN agreed to remove the illegal accessories and attempted to do so.  Mr. Bowen stated that he retrieved a tool(s) to help them, but when he returned he ultimately decided to ask DEB and BROWN to leave the premises and not return. DEB stated that he had just purchased the illegally installed items and that he wanted to know why he could not have them installed on the firearms.

28.     Mr. Bowen escorted DEB and BROWN out of the range area and into the ready-room area, which is the area between the range and the retail store.  DEB made comments to him that he believed the rules and laws regarding NFA were "stupid."  Mr. Bowen advised DEB that

he could not change the firearms laws.  Mr. Bowen stated that DEB also requested a refund of his membership.

29.      Mr. Bowen stated that he agreed to refund Deb's membership. Mr. Bowen wrote out the receipt and asked DEB for his address.  DEB stated his address was 145 Canterbury Lane in Londonderry, New Hampshire.  DEB and BROWN left MFL with the firearms.

30.      I subsequently showed Mr. Bowen a series photographs including a picture of the Springfield Armory, Model Saint, multi caliber short-barreled rifle bearing serial number ST128216 recovered by Rochester, NH Police on April 11, 2020.  Mr. Bowen stated that this firearm appeared to be the same firearm that DEB and BROWN had with them at the MFL on March 30, 2020.  In its current configuration, the Springfield Armory, Model Saint, multi caliber, short-barreled rifle bearing serial number ST128216 is a NFA weapon because it is a pistol with a barrel length that is shorter that sixteen inches and has a shoulder stock attached.

31.      I reviewed the March 30, 2020 video surveillance footage. The video surveillance shows BROWN retrieve a black duffle bag from the hatchback area of a Ford Escape SUV which DEB arrived in. BROWN carried the duffle bag inside while DEB stayed in the SUV. DEB followed BROWN inside later.  BROWN carried the black duffle bag into the range.  DEB and BROWN removed at least three firearms from the black duffel bag.  The video surveillance also shows conversation between Bowen, Norloff, DEB and BROWN as outlined above.  After their conversation with Bowen, both DEB and BROWN packaged up the firearms.

32.      I subsequently interviewed Matthew Norloff, an employee of MFL.  Mr. Norloff stated that on March 30, 2020 when DEB and BROWN entered the range, he was working as the range officer.  Mr. Norloff stated that he initiated contact with DEB and BROWN because he thought the firearm with the red accessories was interesting. (later identified by Mr. Norloff in a

photograph as the Springfield Armory, Model Saint, multi caliber short-barreled rifle bearing

serial number ST128216 recovered by Rochester, NH Police on April 11, 2020)

33.     Mr. Norloff stated that he suspected this firearm would be classified as "any other

weapon" (AOW) under the NFA because it was a pistol firearm configured with a vertical

foregrip.  Mr. Norloff stated he also observed that DEB and BROWN possessed a second firearm

which he suspected was an AOW.  Mr. Norloff stated that when he asked DEB and BROWN

about the two suspected AOW's they told him they did not know the firearms were in an illegal

configuration.

34.     Mr. Norloff stated that he notified Mr. Bowen who returned to the range with Mr.

Norloff.  Mr. Norloff stated that while Mr. Bowen was speaking to DEB and BROWN, he

realized that the two suspected AOW's had shoulder stocks and would thus be short-barreled

rifles which are NFA weapons.  Mr. Norloff stated that he was familiar with NFA firearms both

from his own research and what he has learned working at MFL.

35.     Mr. Bowen also advised me that another employee, Brian Troy, had a previous

conversation with DEB about possessing NFA weapons.  On April 3, 2020, I interviewed Mr.

Troy via telephone.  Mr. Troy stated that approximately one and a half to two months earlier,

DEB and another individual were at MFL.  Mr. Troy subsequently viewed a still photograph of

the video footage of March 30, 2020 and stated that the other individual looked like Mark

BROWN.  Mr. Troy was working as the Range Officer at this time.   Mr. Troy stated that he

noted that DEB and the other individual had an AR variant pistol of unknown make and model

that had a vertical foregrip installed on the firearm which appeared to be "any other weapon"

under the NFA.

36.     Mr. Troy stated that he informed them that the firearm was in a configuration that required it to be registered with ATF or it would be illegal.  Mr. Troy stated that DEB told him he didn't know it was illegal to have the firearm configured that way.  Mr. Troy stated that he obtained a screwdriver and DEB used the screwdriver to remove the vertical foregrip from the firearm.  Mr. Troy stated that DEB and the other individual were allowed to continue shooting following the interaction with Mr. Troy.

37.     On March 31, 2020, a query was conducted of the National Firearms Registration and Transfer Record for any and all National Firearms Act weapons registered to DEB and BROWN.  Neither DEB nor BROWN had firearms registered on the National Firearms Registration and Transfer Record.

38.     When I reviewed the March 18, 2020 video footage of the MFL, it appeared that DEB converted this firearm to a short-barreled rifle by adding a folding shoulder stock.  The video footage supports this conclusion because DEB appeared to place the firearm into his shoulder to stabilize the shooting of the firearm, as you would with a shoulder stock. When shooting a pistol, a person would not use his shoulder to stabilize the firearm.  The video footage also shows DEB using his hands to support the front end of the firearm consistent with a rifle.  I subsequently learned that on January 24, 2020, DEB purchased a folding shoulder stock from the Sig Sauer Pro Shop.

39.     This short-barreled rifle matches the firearm recovered on April 18, 2020 from DEB by Andover Police Department (APD).  Attached to this short barreled rifle was a folding shoulder stock which functioned/unfolded in the same manner as the one in the MFL video footage.   A short-barreled rifle is a NFA weapon. A NFA Weapon must be registered in the National Registration and Transfer Record.

<u>April 11, 2020 Rochester, NH Incident</u>

40.     On April 11, 2020, Rochester Police Department received an anonymous call about stolen firearms in a vehicle with Georgia license plates in the driveway of 47 Charles Street.

41.     Officer Thomas Seager drove by the location and observed a gray Ford Escape with Georgia license plates parked in the driveway.  Officer Seager approached the vehicle and observed two AR variant firearms in the cargo area of the vehicle with additional firearms accessories located on the rear seat.

42.     Officer Seager spoke with the residents of 47 Charles Street who stated that vehicle belonged to their friend, but did not know the location of their friend or the name of their friend.  Officer Seager ran the license plate and learned the vehicle was a rental from Enterprise car rental.  Officer Seager contacted Enterprise car rental and was advised that the vehicle was rented by Mark BROWN, Jr.

43.     Officer Seager requested a criminal history query of BROWN and was advised that BROWN was the subject of a protection order issued out of Woburn, MA District Court. Rochester Police confirmed that the protection order prohibited BROWN from the possession of firearms and that the protection order expired on December 11, 2020.

44.     Officer Seager seized the vehicle, subsequently applied for and was granted a state search warrant for the vehicle.  Rochester Police recovered a Springfield Armory, Model Saint, multi caliber short-barreled rifle bearing serial number ST128216 and a Grand Power Ltd., model Stribog SP9A1, 9mm caliber pistol bearing serial number GSA0537.  Rochester Police also seized .308, 9mm, .22 and 7.62x39 caliber ammunition.

45.     They also located a safe within the vehicle which contained suspected drug packaging material.  In addition, a spoon and syringe were found within the vehicle.  I reviewed the search warrant photographs taken by Rochester Police.  I noted that the firearms and ammunition were located in an open black duffle bag, similar to the one possessed by DEB and BROWN on March 30, 2020 at MFL.



46.     On April 23, 2020, Officer Seager spoke to an individual who called Rochester Police Department about these firearms.  The caller refused to identify himself.  However, Rochester ran the telephone number and learned that the number was associated with DEB.  During this phone call, the caller claimed ownership of the firearms in the vehicle rented by BROWN.   The caller stated that he had been driving the Ford Escape which BROWN rented for him.  The caller stated he would come to Rochester PD the following day for an in-person interview, but never showed.

47.     Shortly after that conversation, BROWN called Rochester Police and spoke with Officer Seager.  BROWN advised that the firearms in the vehicle were not his and he had allowed a friend to use the vehicle.  BROWN identified the friend as Sauma, but claimed to not know Sauma's last name.  BROWN stated that Sauma asked him to rent the vehicle.

April 18, 2020 Andover, Massachusetts Incident

48.     On April 18, 2020, Andover Police Department (APD) received a call notifying

them that an individual appeared to be unconscious in the driver's seat of a vehicle located at the

gas pumps at the Mobil gas station located at 138 River Road.  When Officer Brian MacKenzie

arrived at the Mobil, he observed DEB's Nissan Altima bearing Massachusetts license plate

1XS616 located parked at the gas pumps with DEB unconscious in the driver's seat.  Officer

Mackenzie approached the vehicle and observed a pistol in plain view on the front passenger's

seat of the vehicle.

49.     Officer MacKenzie took custody of the firearm, a ZEV Technologies, Model

OZ9C, 9mm caliber pistol bearing serial number ZC00168, for officer safety and DEB awoke.

Officer MacKenzie ordered DEB to keep his hands visible and requested another unit to respond

to his location.  When another officer arrived, DEB was escorted from the vehicle and placed in

handcuffs for officer safety.  Officer MacKenzie searched DEB for weapons and found two

rounds of ammunition and a small bag of suspected heroin in DEB's pocket.

50.     Officer MacKenzie asked DEB if it was heroin in the small bag and DEB

responded, "No it's fentanyl, you can't get heroin anymore."  Officer MacKenzie asked DEB if

there were weapons or drugs in the vehicle and DEB stated there were additional firearms but no

additional drugs.

51.     DEB consented to a search of the vehicle.  Law enforcement found the following:

- a Sig Sauer, model SIGMPX, 9mm caliber short-barreled rifle bearing serial
  number 62B065062 (NFA Weapon);

- a SWD, model M-11, 9mm caliber pistol bearing serial number 83-0000977;

- a Spikes Tactical, model ST15, multi caliber rifle bearing serial number NSL159702;

- a Henry, model U.S. Survival, .22 caliber rifle bearing serial number SU000088;

- a CN Romarm, Model GP WASR-10/63, 7.62x39mm caliber rifle bearing serial number 1972CB4888 (importer by CAI in Georgia, VT);

- 9mm, .223, and .22 caliber ammunition; and

- other firearm accessories including a suspected barrel extension that resembles a silencer.

52.     Officer MacKenzie also found a sunglass case that contained a loaded syringe and a zip lock bag containing two smaller bags which Officer MacKenzie believed to be fentanyl because it matched the bagged removed from DEB's pocket.  The bag also contained large and small glass like rocks and powder that Officer MacKenzie suspected were methamphetamine. He also found two unopened packs of NARCAN in the glovebox.

53.     According to Officer MacKenzie, DEB was lethargic and nodding off.  At times, it appeared as though DEB was dreaming or in a different state of mind. Officer MacKenzie had to ask DEB questions several times and DEB's replies were delayed.  DEB's speech was slow and monotone. Officer MacKenzie thought it might be a medical condition or a reaction from drug use and possibly the beginning of an overdose.  As a result, DEB was transported by the Andover Fire Department to Holy Family Hospital.

### Sig Sauer, Epping, NH

54.     I contacted Jeff Anderson from Sig Sauer and requested information on the original configuration of the Sig Sauer, model MPX, 9mm caliber, short barreled rifle bearing serial number 62B065062 when it was originally sold.  Mr. Anderson advised that the firearm

model was officially a SIGMPX and was originally sold as a pistol with a 4.5" barrel and a

collapsible Pistol Stabilizing Brace (PSB).  A PSB is not a shoulder stock and mounting a PSB to

a pistol would not create a violation of NFA.

55.     I received a copy of a receipt from the Sig Sauer Pro Shop that was for "SAUMA

DEBE" dated January 24, 2020.  The address on the receipt is "145 CANTERBURRY LN

LONDONDERRY, NH 03053."  The receipt indicated that DEB returned a holster for a model

Sig Sauer, model P365.  The receipt further indicated that DEB purchased another holster, a

SIGMPX magazine, and two folding shoulder stocks for a Sig Sauer SIGMPX.

56.     On May 5, 2020, I interviewed Kevin Carpenter, Compliance Specialist for the

Sig Sauer Pro Shop.  I showed Mr. Carpenter the picture of the Sig Sauer, model SIGMPX, 9mm

caliber short-barreled rifle bearing serial number 62B065062 recovered from DEB on April 18,

2020 by APD.  Mr. Carpenter advised that the folding shoulder stock in the picture matches the

second to last item on DEB's Sig Sauer Pro Shop receipt dated January 24, 2020.

<u>April 24, 2020 Rollinsford Incident</u>

57.     On April 24, 2020, Rollinsford, NH Police Sergeant William Hancock stopped a

Nissan Altima registered to DEB after learning that DEB's license was suspended. Sergeant

Hancock identified the driver as Patrick BAKER and DEB as the front passenger seat.  BAKER

provided a State of New Hampshire identification and stated that he did not have a driver's

license.  Sergeant Hancock then addressed DEB who provided his Massachusetts driver's

license.

58.     Sergeant Hancock had DEB and BAKER separately exit the vehicle and he wrote

BAKER a summons for operating after suspension.  Sergeant Hancock advised DEB and

BAKER they were free to leave, but notified them that the vehicle was being towed since neither of them had a valid license. DEB and BAKER remained on site because neither could get a ride.

59.     During the inventory search of the vehicle, Sergeant Hancock located Subutex (Buprenorphine) in the center console. DEB was placed under arrest because he was the registered owner of the vehicle. Sergeant Hancock asked DEB to empty his pockets onto the hood of Sergeant Hancock's cruiser. DEB removed a number of clean syringes from his pockets. Sergeant Hancock handcuffed DEB and placed DEB in his cruiser.

60.     When Sergeant Hancock walked back to the location where DEB had removed all the items from his pockets, there was a small bag of suspected methamphetamine that had not been there previous to DEB emptying his pockets.  Sergeant Hancock retrieved the small bag of suspected methamphetamine. Sergeant Hancock transported DEB and BAKER to the Rollinsford Police Station. (BAKER had voluntarily agreed to ride to the police station because he could not arrange for anyone to pick him up.)

61.     At the Rollinsford Police Station, DEB was advised of his *Miranda* Rights. DEB waived his rights and agreed to speak with Sergeant Hancock. During the subsequent interview, DEB denied that the small bag of suspected methamphetamine was his. However, DEB admitted that he was a methamphetamine and heroin user.

62.     On April 24, 2020, DEA Task Force Officer (TFO) Tim Keefe used a Thermofisher Scientific TruNarc handheld narcotics analyzer to test the small bag of suspected methamphetamine. The small bag of suspected methamphetamine tested positive for fentanyl.

63.     On April 25, 2020, DEB was entered into the NICS Index for his admission to Sergeant Hancock of being a user of controlled substances on April 24, 2020 which would prohibit him from legally purchasing and possessing a firearm and ammunition.

64.     On April 29, 2020, DEB's attorney was notified hat DEB was prohibited from the

possession of firearms under Title 18, U.S.C. Section 922(g)(3) because DEB was a user, or

addicted, to controlled substances.

<u>May 1, 2020 Rochester Incident</u>

65.     On May 1, 2020, Rochester Police Department received a call about a vehicle

blocking the driveway to 82 Winter Street.  Officer Patrick Flathers was dispatched to the call

and was joined later by Officer Kendall DeCost.  Upon arrival Officer Flathers noted that a black

2019 Ford Fusion bearing New York license plate JDN4792 was parked on Winter Street and

blocking the driveway to 82 Winter Street.  Officer Flathers ran the license plate and learned the

vehicle was registered to Enterprise car rental.

66.     Officer Flathers made contact with Katie MERRIHEW who was asleep in the

back seat of the vehicle.  MERRIHEW stated that DEB was driving the vehicle and Antoine

VALENTIN was another passenger in the vehicle before she fell asleep**.**  Officers noted a purse

with a glass pipe in the vehicle which MERRIHEW stated was hers.  Officers also noted two

suspected drug kits with small zip lock bags on the exterior of the pouches.  Officer Flathers

believed the two pouches were drug "kits" which is a term used to define the equipment that

drug users carry with them in order to consume controlled substances, especially intravenous

drugs.  Officers seized the vehicle while they applied for a search warrant.

67.     DEB and Andrea MACEACHERN returned to the vehicle prior to it being towed

and spoke to the officers.  DEB admitted that he was driving the vehicle when it was parked in

its current location.  DEB stated that his friend rented the vehicle and allowed him to use it.

68.     Officer DeCost applied for and was granted a search warrant for the vehicle.

Officers conducted the search of the vehicle and found a Radical Firearms, model RF-15, .300

Blackout caliber pistol bearing serial number RT02400. Officers also located two bags
containing a brown powder substance, one bag containing a clear crystal substance, a bag
containing a green leafy substance, assorted drug paraphernalia and identification documents
including VALENTIN's. In addition, they also found multiple boxes of 10mm and .300
Blackout caliber ammunition.

69.     On May 6, 2020, DEB met with Officer Seager regarding the firearms recovered
by Rochester PD on April 11, 2020. DEB stated that he purchased the firearms in private sales
via Armslist.com. DEB stated that there may have been a Diamondback .308 caliber firearm
(DEB did not specify pistol or rifle) in the vehicle as well when it was seized by Rochester police
on April 11, 2020. DEB stated that he purchased a gun safe that was capable of holding ten
firearms that he kept at his residence in Londonderry.

70.     Officer Seager stated that DEB told him that he had more firearms than would fit
in the safe and had taken to storing his additional firearms at his storage unit in Nashua, NH.
DEB stated that he did not have a safe at his storage unit. DEB stated that recently he has been
living in Rochester and Londonderry. DEB did not know the address of where he was staying in
Rochester. DEB stated that he had planned to sell the Grand Power Ltd., model Stribog SP9A1,
9mm caliber pistol bearing serial number GSA0537.

71.     Officer Seager asked DEB about the firearm and drugs that were located in the
black 2019 Ford Fusion that DEB was driving on May 1, 2020. DEB stated that he did not know
about any firearms in that vehicle. DEB also stated that he had no knowledge of the drugs that
were located in the vehicle. DEB asked if Rochester Police would return his firearms to him
and Officer Seager notified him that they had been turned over to ATF and that DEB was

prohibited from the possession of firearms.  Officer Seager stated that DEB made a statement to the effect that ATF would charge him because of his firearms' illegal configuration.

72.    On May 2, 2020, Officer Seager contacted Enterprise car rental and was advised that Kimberly CORCORAN rented the black 2019 Ford Fusion bearing New York license plate JDN4792.  Officer Seager interviewed CORCORAN at her residence.  Officer Seager noted that DEB's Nissan Altima bearing Massachusetts license plate 1XS616 was in CORCORAN's driveway.  CORCORAN stated that she had rented the black 2019 Ford Fusion bearing New York license plate JDN4792 and DEB had been driving it since April 29, 2020.  CORCORAN stated that DEB gave her his car to drive in exchange.

73.    CORCORAN stated that there were no firearms in DEB's vehicle and allowed Officer Seager to look into the vehicle.  Officer Seager photographed a gun case for an Arms Corporation of the Philippines (Armscor or ACP), Model M1911 A2, 10mm caliber Pistol bearing serial number RIA031056 in DEB's vehicle.

<u>RightSpace Storage</u>

74.    As a result of a grand jury subpoena, I reviewed documents from RightSpace Storage located at 15 Northwest Boulevard in Nashua, New Hampshire showing that on October 8, 2019, DEB rented unit #69.  According to the RightSpace Storage – Customer Information Sheet, dated October 9, 2019, DEB listed an address of 8 Laraway Court, apartment 1B in Derry, NH 03038.  The form listed the billing address for the provided credit card as 78 Mill Street in Woburn, Massachusetts.

75.    A review of the user activity report showed Deb visited the unit four days in October 2019, eighteen days in November 2019, twenty-four days in December 2019, and

thirteen days in January 2020 (it should be noted that some days DEB visited the unit multiple times).

76.     On May 12 - 14, 2020, RightSpace Storage employees provided additional documentation that DEB still had a contract with them for unit #69 and that the last time he had used his code to access the gates afterhours was on April 5, 2020 at 8:58 p.m.  I was also advised that during business hours, the gates to the facility are open and DEB would not be required to use his code to gain access to his storage unit.

Shooters Outpost

77.     On May 11, 2020, James McLoud of Shooters Outpost contacted me and advised that DEB had been in Shooters Outpost on May 10, 2020, and purchased a buffer tube and arm brace for an AR variant firearm.  Mr. McLoud advised that he had a text message conversation with DEB because he did not want DEB shopping at his store.  I met with Mr. McLoud and took photographs of the text message conversation.  I noted that DEB sent one message which indicated that he would not give up his right to possess firearms without a fight.



78.     On May 14, 2020, I interviewed CORCORAN with Strafford County Deputy Chris Mangum.  CORCORAN stated that DEB was trafficking methamphetamine and heroin/fentanyl in the Rochester, NH area.  CORCORAN stated that the first time she met DEB was in approximately March of 2020 at 47 Charles Street in Rochester, NH with Adam CLEMENT.  CORCORAN stated that DEB told her that he owned between thirty to fifty firearms.

79.     CORCORAN stated DEB kept the firearms in a large backpack that was almost as tall as DEB.  CORCORAN stated that bag was blue or black in color.  CORCORAN stated that DEB said he kept his firearms at his parent's house in Woburn, Massachusetts.  CORCORAN stated that DEB stated that his parents were nervous about having the firearms there.

80.     CORCORAN stated that the last time she saw DEB with a firearm was on or about the day she rented the black 2019 Ford Fusion bearing New York license plate JDN4792

for DEB.  CORCORAN stated that on that day she saw DEB with a black pistol and (mini or small) frame revolver.  CORCORAN stated that she has not had contact with DEB since May 4, 2020 since they had a long argument over the black 2019 Ford Fusion bearing New York license plate JDN4792 rental car that was impounded when DEB was driving it.

81.     CORCORAN stated that she and DEB purchased ammunition from Renaissance firearms in Barrington, NH.  CORCORAN stated that DEB gave her $80.00 dollars in U.S. currency to purchase ammunition.  CORCORAN stated that the ammunition she purchased cost a total of $97.97 and CORCORAN put the remainder on her debit card.  CORCORAN stated that DEB purchased approximately another $100 in ammunition during the same visit to Renaissance Firearms.

82.     CORCORAN volunteered to show investigators the Facebook Messenger conversation she had with DEB that began on April 27, 2020 and ceased on May 4, 2020.  I noted that on April 29, 2020 at approximately 4:07 p.m., DEB sent CORCORAN a screenshot of a message which appeared to be from his attorney that advised DEB that he was prohibited from the possession of firearms and ammunition.  The message further advised DEB he would need to dispose of the firearms and ammunition in his possession.





83.     On May 15, 2020, S/A Forte obtained a copy of the receipt for the ammunition CORCORAN purchased at Renaissance Firearms.  The receipt indicated that CORCORAN purchased one box of Sig Sauer 9mm ammunition and two boxes of Sig Sauer .300 Blackout ammunition for a total of $77.97.

84.     Based on my training and expertise as an Interstate Nexus Expert for ATF, I have determined that the Sig Sauer, model P365, 9mm caliber pistol, bearing serial number 66A392010 and the Arms Corporation of the Philippines (Armscor or ACP), model M1911 A2, 10mm caliber pistol, bearing serial number RIA031056 have travelled in, or affected, interstate or foreign commerce.  I also determined that Diamondback Firearms .308 caliber rifles and pistols are either not manufactured in the state of New Hampshire, or if they are manufactured in the State of New Hampshire, they are then shipped outside of the state for final assembly.

85.     I know from my experience as an ATF Agent, and in particular from my participation with other agents in the execution of numerous search warrants authorizing the seizure of firearms, that those who own and possess firearms generally maintain possession of them for several years.  Persons who own firearms generally keep them on their persons, in their residences and motor vehicles, or in places where they store their personal property.  The reasons owners of firearms generally maintain and preserve them for several years include the facts that firearms are somewhat expensive, there is an administrative delay in buying them (particularly true when a mail service is used), and firearms do not easily wear out.  In my experience, firearms are not depleted through use, nor are they often exchanged for another firearm immediately after being obtained.  Firearms are like expensive tools, which their owners keep and maintain over several years.  The reasons owners of firearms generally maintain firearms in and about their home or vehicles include the facts that maintenance of them in and about the

home or vehicles permits easy access to the firearms, and firearms must be maintained in an environment where they will be secure from theft, as well as safe from rust and corrosion.  In the residence, in the vehicle, and on the person, the firearm is readily available in the event the need for its use arises.

86.     I also know through my experience that most individuals who purchase firearms retain certain documents relating to those purchases, such as sales receipts, factory warranties, and canceled checks, among their personal papers in their residence or where they store their personal property.  I also know through my experience that almost without exception individuals who possess firearms also possess related items such as gun cases, ammunition, accessories, gun cleaning supplies and equipment, related to the care and maintenance of the firearms.

87.     I also know through my training and experience that illegally converted firearms are often secreted in a residence in an attempt to keep other individuals or law enforcement from the discovery of illegally obtained weapons.  It also know through my training and experience that individuals often secret those illegally obtained firearms in common areas of a residence or apartment buildings such as laundry rooms, living rooms,  kitchens and/or outbuildings.

## CONCLUSION

88.     Based on the foregoing information, I believe probable cause exists that there is now, at the location described in Attachment A and on the person of Sauma DEB, items set forth in Attachment B which constitute evidence of the commission of criminal offenses, specifically: Title 18, United States Code, § 922(g)(3), Possession of a Firearm by an Unlawful User of a Controlled Substance and Title 26, United States Code §5845 and §5861(d), Possession of an Unregistered NFA Firearm.

89.     I submit that this affidavit supports probable cause for a search warrant

authorizing the search of: (1) 145 Canterbury Lane in Londonderry, New Hampshire; (2) a

Nissan Altima bearing Massachusetts license plate 1XS616; (3) RightSpace Storage, 15

Northwest Boulevard, Nashua, New Hampshire, Unit #69; and (4) the person of Sauma Deb and

to seek the items described in Attachment B (herein incorporated by reference).

I declare under the penalty of perjury that the above-foregoing facts and circumstances

are true and correct to the best of my knowledge and belief.

/s/ John W. Forte
John W. Forte
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives

The affiant appeared before my by telephonic conference on this date pursuant to Fed. R. Crim.
P. 4.1 and affirmed under oath the content this affidavit via telephone.

Date: **May 20, 2020**

Time: 4:46 PM, May 20, 2020

United States Magistrate Judge

**ATTACHMENT A**

The property to be seized and searched is an attached condo unit that is clearly marked "145" on the door frame.  The main structure is subdivided into 7 attached condo units.  #145 is located the second to last on the right side when looking at the structure from Canterbury Lane. The structure is two-story wood framed with what is believed to be a walk out basement on the rear side of the building and a possible attic.  There is a raised deck on the rear of the building that would be level with the first floor of the residence.  There are a minimum of two access doors on the first floor.  The structure is light brown in color with white trim.







**ATTACHMENT B**

The following is a list of the evidence, fruits and instrumentalities of the violations of Title 18, U.S.C. §922 (g) (3) and Title 26, U.S.C. §5845 and §5861(d):

1.  Firearms; ammunition; and other evidence pertaining to the possession of firearms or ammunition, including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment; photographs of firearms or persons in possession of firearms; records and receipts indicating the purchase, repair, receipt, sale or possession of firearms, ammunition, and firearms equipment; canceled checks and other financial records evidencing the purchase, receipt, sale or possession of firearms; receipts or documents indicating other storage locations; information regarding firearms transactions on computer printouts, cassette, disk or diskette; documents indicating felony conviction; receipts or documents indicating other storage locations; pagers, cellular telephones or other data recording devices located on the property, photographs, letters, documents that establish the persons who have control over property and vehicles searched and from which evidence is seized, such as: personal mail, telephone records, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, keys, and vehicle registration information.

2.  Complete and partially complete firearms that qualify as firearms under the National Firearms Act.

3.  Any and all firearms accessories which if added to a firearm may qualify it as a firearm under the National Firearm Act; including, but not limited to, shoulder stocks (including collapsible, removable, and folding shoulder stocks), vertical foregrips, firearm barrels, and wrist braces that are used to assist shooters to function certain pistols.

4.  Packaging or containers for firearms, ammunition, firearms accessories which if added to a firearm may qualify it as a firearm under the National Firearm Act; including, but not limited to, shoulder stocks (including collapsible, removable, and folding shoulder stocks), vertical foregrips, firearm barrels, and wrist braces.

5.  Documentation related to the importation, manufacture, purchase, possession, sale or use of explosives and their precursors, explosive devices or destructive devices (including components of such devices) including but not limited to pricing sheets, sales receipts, bills of lading, price tags, ledgers or logs. Currency in the form of cash, check, money order, or other real and tangible proceeds or assets from the sale or intended purchase of explosive materials or destructive devices.

6.  Manuals or other literature relating to the assembly, manufacture and/or function of explosives, explosives devices or destructive devices including but not limited to: books, pamphlets, drawings, sketches, diagrams, photographs, computer prints or photocopies. Paper in handwritten form, typed, photocopied or printed or stored on computers, cellular or other Wi-Fi enabled devices, thumb or flash drives, magnetic tape, cassette, disk, diskette, photo-optical devices, faxes, photographic film or any other medium.

7.   Indicia of residency to include but not limited to vehicle, motorcycle, boat or trailer registration, utility bills, cable bills, bank or credit card statements, personal mail, checkbooks, personal identification, notes, other- correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, receipts for vehicle parts and repairs and telephone answering machine introductions and fingerprints.

8.   Any photographs and videos of firearms of DEB in possession of firearms.

9.   Documents relating to the acquisition, purchase, sale, and/or repair of the aforementioned items, including but not limited to: receipts and documents reflecting the dates of these transactions, the items acquired, and the names, mailing addresses, email addresses, and/or telephone numbers of individuals associated with these activities.